## PEOPLE *v.* DIXON.

1. EMBEZZLEMENT—SUFFICIENCY OF EVIDENCE—WEIGHT OF EVIDENCE.

    In prosecution for embezzlement, evidence *held,* sufficient to present issue for jury, and prevent ruling that verdict of guilty was against great weight of evidence.

2. SAME—EVIDENCE—DISPOSITION OF OTHER CHECKS.

    In prosecution for embezzlement of order treated as check, testimony as to defendant's disposition of other checks, *held,* properly received on question of his intent (3 Comp. Laws 1929, § 17320).

3. SAME—TECHNICAL VALIDITY OF INSTRUMENT NOT CONTROLLING—MISAPPROPRIATION.

    Embezzlement of check or order intrusted to agent does not depend on technical validity or effect of instrument, but occurs when it is misappropriated by agent to injury of principal.

4. SAME—TESTIMONY BY HANDWRITING EXPERT.

    In prosecution for embezzlement motion to strike testimony of handwriting expert, on ground that he had not given reasons for his opinion of signatures was properly denied, where record shows that witness gave his reasons and stated grounds on which his opinion was based.

5. CRIMINAL LAW—TRIAL—INSTRUCTION—HANDWRITING EXPERT.

    In prosecution for embezzlement, defendant may not complain of instruction on right of jury to reject handwriting expert's opinion, which was more favorable than he was entitled to.

6. SAME—NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.

    Motion for new trial on ground of newly-discovered evidence was properly denied, where showing was insufficient.

Appeal from Saginaw; Browne (Clarence M.), J. Submitted April 14, 1932. (Docket No. 161, Calendar No. 35,704.) Decided June 6, 1932. Rehearing denied September 14, 1932.

On value and weight of expert testimony as to handwriting, see annotation in L. R. A. 1918D, 655.

Robert J. Dixon was convicted of embezzlement. Affirmed.

*Riley L. Crane,* for appellant.

*Paul W. Voorhies,* Attorney General, and *Hugo E. Braun,* Special Prosecuting Attorney, for the people.

FEAD, J. Defendant was convicted of embezzlement of an order for payment of $178, drawn by the auditor general of the State upon the State treasurer, and described in the information both as money and as a check.

In 1927 and 1928, defendant was superintendent of maintenance, in Saginaw county, for the State highway department. As part of his duties, he kept a time book of the labor of men employed under him. From the time book, his wife made daily report sheets which defendant filed in the Saginaw office of the department, where pay roll vouchers were compiled from them. Upon the vouchers, individual pay checks were issued by the auditor general and sent to defendant, who distributed them to the employees.

The check in question was issued to W. M. Brown and bears indorsement in his name. It was further indorsed by defendant and applied by him in payment of his personal debt to a merchant. He said he had paid Brown the money, in pursuance of a somewhat general practice of advancing money to his men or cashing their checks for them.

In general, the people presented testimony that there was no W. M. Brown on the State highway work under defendant's charge; that Brown's name appeared on daily reports some 122 times in 1927 and 1928; that several employees listed on defend-

ant's reports as working on the same section with Brown at different times and others having general duties in the county did not know him, but would have known him if he had been employed as shown by the reports; that in 16 instances Brown's name appeared at the bottom of the daily reports as though added after the reports were made, the name being in handwriting different from Mrs. Dixon's and similar to defendant's; that defendant cashed all of Brown's checks, usually at the same time and place as he cashed his own; that defendant listed a fictitious F. H. Brown as an employee, and when delivery of his check was attempted by another representative of the department accompanying defendant, defendant claimed to have paid Brown in advance so he could go away; that defendant had received and cashed four other checks, three of the payees in which denied receipt of the check or money or right thereto, and, the other being dead, similar testimony as to his check was given by his wife and son. A handwriting expert gave his opinion that the indorsement of W. M. Brown's name on the various checks and of F. H. Brown's name and the additions of the names to the daily reports were in defendant's handwriting.

Defendant claimed W. M. Brown was a genuine employee and checks to him represented actual labor. Several witnesses testified they knew Brown, that he worked for defendant, and that F. H. Brown was also an employee. Defendant explained that the four other checks disclaimed by the payees represented purchase of materials, and, to avoid delay, were handled as labor bills in a manner which, while irregular, contained no actual wrong to the State. He said Brown's indorsements were genuine and the daily reports were wholly in his wife's handwriting.

In addition, the witnesses testified to many details, and, of course, displayed the common lapses of memory, contradictions, indications of bias and favoritism which are ordinary incidents of a long trial. The credibility of witnesses was an important consideration, and the testimony on both sides was strong enough to present a clear issue for the jury and prevent a ruling that, the verdict was against the great weight of the evidence.

Testimony of the disposition of other checks by defendant was offered and received upon the question of his intent and was strictly so confined in the charge. It was competent. 3 Comp. Laws 1929, § 17320.

In the opening statement, the people charged that W. M. Brown, as an employee of the department, was a fictitious person. Upon this statement, defendant argues that the check, therefore, had no payee, was not valid, and could not be the subject of embezzlement. He cites no authority for the position. A check or order for the payment of money is valuable only if and because money can be obtained on it. Embezzlement of a check or order intrusted to an agent does not depend upon the technical validity or effect of the instrument, but occurs when it is misappropriated by the agent to the injury of the principal. *People* v. *Hanaw,* 107 Mich. 337.

The court properly denied defendant's motion, made at the close of the proofs, to strike the testimony of the handwriting expert on the ground that he had not given his reasons for his opinion of the signatures. *In re Lembrich's Estate,* 243 Mich. 39. The record is that the witness gave his reasons and stated the grounds upon which his opinion was based.

On defendant's request, the court charged the jury, in substance, that they could reject the expert's opinion as to any signatures for which he had not given his reasons. Defendant now contends that this cast on the jury the function of the court to pass upon the competency of testimony. As the court properly had permitted the testimony to stand, the charge was more favorable to defendant than was his due.

Defendant made motion for a new trial upon the ground that a new witness had been discovered who knew W. M. Brown, and that information of Brown's whereabouts had been obtained. The new witness was merely cumulative, and it is not conceivable that his testimony would have changed the result. Defendant's attorney received a letter purporting to be from W. M. Brown, written from Nelson, British Columbia. The attorney undertook to find Brown, by letter and telegram, but was unable to do so. The showing contained no assurance of the genuineness of the letter, the existence of Brown, or the probability or even possibility of his being produced as a witness on a new trial. The showing was insufficient.

We discover no reversible error in the record, and judgment is affirmed, with costs.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.