PEOPLE v WILKINS

1. EVIDENCE—HEARSAY—MATTERS ASSERTED.

   Hearsay is an extrajudicial statement offered to prove the truth of the matter asserted.

2. APPEAL AND ERROR—CRIMINAL LAW—HEARSAY—POLICE TESTIMONY—ANONYMOUS INFORMANTS.

   A trial court did not err in a trial for carrying a weapon in a motor vehicle in admitting a police officer's testimony regarding the information received from an anonymous informant about the weapon being carried where the jury was instructed that the testimony was not offered to prove the truth of the informant's statements but only to illustrate the basis for the officer's subsequent actions; the testimony was not hearsay.

3. CRIMINAL LAW—EVIDENCE—OTHER BAD ACTS—PREJUDICIAL EFFECT.

   Evidence of a defendant's other bad acts is generally inadmissible because its probative value is outweighed by the likelihood that it will prejudice the jury against the defendant, preventing an objective determination of the disputed factual issues.

4. CRIMINAL LAW—EVIDENCE—OTHER BAD ACTS—ADMISSIBILITY—REQUIREMENTS—STATUTES.

   Evidence of a defendant's bad acts other than the charged offense

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 497.

[2, 8] 29 Am Jur 2d, Evidence § 500.

   79 Am Jur 2d, Weapons and Firearms § 12.

[3, 6] 29 Am Jur 2d, Evidence § 320.

[4, 5, 8, 9] 29 Am Jur 2d, Evidence §§ 321, 322, 324–326.

[6] 29 Am Jur 2d, Evidence § 260.

[7–9] 5 Am Jur 2d, Appeal and Error §§ 776–778, 798.

[8] 5 Am Jur 2d, Appeal and Error § 806.

[10] 21 Am Jur 2d, Criminal Law § 540.

   Validity, under indeterminate sentence law, of sentence fixing identical minimum and maximum terms of imprisonment. 29 ALR2d 1344.

is inadmissible unless it satisfies the following requirements: (1) there must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced, (2) there must be some special circumstances of the prior bad act which tend to prove that the facts or circumstances of the other bad acts are probative of the defendant's motive, intent, absence of mistake or accident, scheme, plan or system in committing the charged offense, (3) the defendant's motive, intent, absence of mistake or accident, scheme, plan or system must be material to the determination of the defendant's guilt of the charged offense, and (4) the matter which they tend to prove is disputed by the defendant in opening argument, by cross-examination of prosecution witnesses or by his presenting affirmative evidence on them (MCLA 768.27; MSA 28.1050).

5. CRIMINAL LAW—EVIDENCE—OTHER BAD ACTS—GENERAL RULE— EXCEPTIONS—MATTERS DISPUTED BY DEFENDANT—PROSECUTORS —CASE IN CHIEF.

The exceptions to the general rule that evidence of other bad acts may be introduced only after the matter which they tend to prove is disputed by the defendant are: (1) the prosecution may introduce in its case in chief evidence probative of a design, scheme or plan, or of the identity of the perpetrator of the charged offense where the purpose of such evidence is to prove that defendant, not some other person, committed the act for which he stands accused, (2) in cases in which the crime charged is one in which the criminal intent necessary for conviction may not be inferred from the mere commission of the act, the prosecution may introduce such evidence in its case in chief to prove that intent, and (3) the prosecutor may introduce evidence in its case in chief of a plan, scheme or system where the charged offense is conspiracy.

6. CRIMINAL LAW—EVIDENCE—OTHER BAD ACTS—PREJUDICIAL EF- FECT—FACTORS.

After the requirements for the admission of evidence of other bad acts, other than the charged offense, have been met, a trial court still must weigh the probative value of such evidence against its likely prejudicial effect and exclude such evidence if the latter predominates; in making its determination the court should consider *inter alia* the availability of less prejudicial sources of proof, the necessity of the evidence to prove an element of the prosecution's case, the defendant's theory of the case, the tendency of the evidence to inflame the passions of the jury, and its potential for confusing the issues in the case.

7. Appeal and Error—Criminal Law—Harmless Error—Reversible Error—Jury.

The standards for determining whether error committed during a criminal trial is reversible on appeal or merely harmless are (1) was the error so offensive to the maintenance of a sound judicial system as to require reversal, and (2) if not was the error harmless beyond a reasonable doubt; an error is not harmless error where it is reasonably possible that in a trial free of the error even one juror might have voted to acquit the defendant.

8. Criminal Law—Evidence—Appeal and Error—Harmless Error—Carrying Concealed Weapons—Prior Convictions—Defendant's Testimony.

The erroneous admission of testimony, in a trial for carrying a weapon in a motor vehicle, that the defendant had been arrested previously for carrying a concealed weapon and had pleaded guilty to a lesser offense was harmless error where the defendant himself testified at length as to the circumstances underlying the prior conviction.

9. Appeal and Error—Criminal Law—Evidence—Harmless Error—Carrying Concealed Weapons—Prior Arrests—Jury.

The erroneous admission of evidence, in a trial for carrying a weapon in a motor vehicle, regarding a prior incident where the defendant was arrested for carrying a concealed weapon but the charges against him were dropped was harmless error where the Court of Appeals finds no reasonable possibility that exclusion of the erroneously admitted evidence would have altered the jury's verdict.

10. Criminal Law—Sentences—Indeterminate Sentences—Statutes.

Any sentence which provides for a minimum exceeding two-thirds of the maximum is improper as failing to comply with the indeterminate sentence act as interpreted by case precedent (MCLA 769.8; MSA 28.1080).

Appeal from Recorder's Court of Detroit, Joseph A. Gillis, J. Submitted November 8, 1977, at Detroit. (Docket No. 31149.) Decided April 3, 1978. Leave to appeal applied for.

Nathaniel Wilkins was convicted of carrying a pistol in a motor vehicle. Defendant appeals. Affirmed as modified.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Anne B. Wetherholt,* Assistant Prosecuting Attorney, for the people.

*Charles Burke,* for defendant.

Before: D. C. RILEY, P. J., and D. F. WALSH AND A. C. MILLER,* JJ.

D. F. WALSH, J. Defendant was convicted by a jury of carrying a pistol in a motor vehicle, MCLA 750.227; MSA 28.424, and sentenced to 4-1/2 to 5 years imprisonment. He appeals as of right.

According to the trial testimony, at 8 p.m. on the day of the incident, one of the arresting officers was informed that a black male fitting the defendant's description would be at a certain address carrying a gun that the informer had seen in the defendant's possession. The tipster also gave a description of the defendant's car and its license number. Acting on this information, three officers watched the address until the defendant came out and entered his car. As the defendant was pulling away, the police drew alongside his car and identified themselves. A short chase ensued during which the defendant threw an automatic pistol out the window of his car.

The prosecution also presented testimony concerning an unsigned statement made by the defendant shortly after his arrest. Therein the defendant stated that he had obtained the gun from an acquaintance for approximately $65. He also said that he and a friend had test fired the pistol, but that it was defective in failing to eject the spent shell. Defendant did not sign the statement,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

telling the interrogating officer that he was "talking as a man" and not making a formal statement.

During its case in chief, the prosecution was permitted to introduce evidence that the defendant had been arrested previously for carrying a concealed weapon and had pleaded guilty to a lesser offense. The trial court allowed the evidence, over objection, as probative of intent, absence of mistake, and knowledge that the gun was in the car in the instant case. MCLA 768.27; MSA 28.1050.

The prosecution also was allowed to cross-examine the defendant regarding a 1976 incident in which he was arrested for carrying a concealed weapon. In that instance, the defendant was driving an automobile and was stopped for speeding. As his passenger exited the car, one pistol fell from the passenger side of the car and another was discovered in the passenger's waistband. She claimed possession of both guns. The two were arrested on the weapons charge, but a warrant against the defendant was refused and the charge against him was dropped.

Defendant makes four claims of error in his appeal: (1) that the trial court erred in admitting the police officer's testimony regarding the information received from the anonymous informant; (2) that the trial court erred in admitting testimony concerning defendant's previous conviction; (3) that the trial court erroneously permitted cross-examination of the defendant about the 1976 incident; (4) that the sentence imposed violated the indeterminate sentencing act. MCLA 769.8; MSA 28.1080.

The basis of the defendant's objection to the admission of testimony concerning the tipster's information is that it was inadmissible hearsay. His argument falls with its premise. Hearsay is an

extrajudicial statement offered to prove the truth of the matter asserted. *People v Cunningham,* 398 Mich 514; 248 NW2d 166 (1976), McCormick, Evidence (2d ed), § 246. In the case at bar, the jury was instructed that the testimony was not offered to prove the truth of the informant's statements but only to illustrate the basis for the officers' subsequent actions. Thus, the testimony was not hearsay and its admission was not error.

Defendant's second and third claims of error involve the admission of evidence of other bad acts under MCLA 768.27; MSA 28.1050. In view of the lack of a comprehensive appellate statement defining the limited circumstances under which such evidence is admissible, we are constrained to discuss and delineate the similar acts doctrine.

In Michigan, evidence of a defendant's other bad acts is generally inadmissible because its probative value is outweighed by the likelihood that it will prejudice the jury against the defendant, preventing an objective determination of the disputed factual issues. *People v Oliphant,* 399 Mich 472; 250 NW2d 443 (1976), *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973).

"This rule of law guards against convicting an accused person because he is a bad man. Barring such evidence prevents the trier of fact from inferring that the accused person is guilty of the charged offense because he has committed other similar acts or crimes." *People v Matthews,* 17 Mich App 48, 52; 169 NW2d 138 (1969).

Prevention of that type of prejudice has been of continual concern to our courts for over a century. See, *e.g., People v Dean,* 253 Mich 434; 235 NW 211 (1931), *People v Schweitzer,* 23 Mich 301 (1871).

"From the time of *Lightfoot v People,* 16 Mich 507 [1868], and *People v Schweitzer,* 23 Mich 301 [1871], we have excluded proofs of other unrelated crimes unless they fall within the limited exceptions recognized by statute or our decisions." *People v Lundberg,* 364 Mich 596, 603; 111 NW2d 809 (1961).

As indicated by the above quotation, there have developed a limited number of statutory and judicial exceptions to the above exclusionary rule. The case at bar involves the exceptions enumerated in MCLA 768.27; MSA 28.1050:[1]

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

Even given this judicially approved statutory directive, the degree of prejudice inherent in evidence of other bad acts dictates that it be admitted only in narrowly described circumstances. Accord-

---

[1] The scope of this opinion also includes the judicially created exception allowing such evidence to prove identity. *People v Kelly,* 386 Mich 330; 192 NW2d 494 (1971). However, the rules hereinafter stated do not apply to the judicial exception admitting other bad acts to show familiarity between a defendant and a person with whom he allegedly committed a sexual offense. That exception is generally used to support the credibility of a complainant in a sex offense case; as such it is premised upon considerations distinct from those governing the admissibility of such evidence in other contexts. *See, People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973), *People v Jenness,* 5 Mich 305 (1858).

ingly, we hold that such evidence is inadmissible unless it satisfies the following requirements.

First, there must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced. *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955), McCormick, Evidence (2d ed), § 190.[2]

Second, there must be some special circumstances of the prior bad act which tend to prove one of the statutory items. *People v Lundberg, supra, People v Padgett,* 306 Mich 545; 11 NW2d 235 (1943). For example, if a defendant were charged with robbery, another robbery committed by the defendant would not be admissible to prove intent merely because it also involved specific intent to rob. The law requires an additional showing that the facts or circumstances of the other bad acts are probative of the defendant's motive, intent, absence of mistake or accident, scheme, plan or system *in committing the charged offense.*[3] See, *People v Locke,* 275 Mich 333; 266 NW 370 (1936), Slough and Knightly, *Other Vices, Other Crimes,* 41 Iowa L Rev 325 (1956). In the absence of such a connection, the evidence would be inadmissible.[4]

---

[2] However, the defendant's commission of the other acts need not be established beyond a reasonable doubt. *People v Duncan,* 402 Mich 1; 260 NW2d 58 (1977), *People v Allen,* 351 Mich 535; 88 NW2d 433 (1958).

[3] Although the example given involves only intent, the requirement of a connection to the charged offense applies equally to evidence of other bad acts introduced to show any of the facts permitted to be so demonstrated. For illustrations of this principle, *compare, e.g., People v Duncan, supra, People v Oliphant,* 399 Mich 472; 250 NW2d 443 (1976), *People v Allen, supra, People v Davis,* 343 Mich 348; 72 NW2d 269 (1955), *People v Morehouse,* 328 Mich 689; 44 NW2d 830 (1950), and *People v Kalder,* 284 Mich 235; 279 NW 493 (1938), with *People v Lundberg,* 364 Mich 596; 111 NW2d 809 (1961), *People v Padgett,* 306 Mich 545; 11 NW2d 235 (1943), *People v Locke,* 275 Mich 333; 266 NW 370 (1936), and *People v Dean,* 253 Mich 434; 235 NW 211 (1931).

[4] The result of admitting such evidence without the requisite con-

The third requirement is that the defendant's motive, intent, absence of mistake or accident, scheme, plan or system must be material to the determination of the defendant's guilt of the charged offense. *People v Oliphant, supra, People v Riddle,* 322 Mich 199; 33 NW2d 759 (1948), *People v Stander,* 73 Mich App 617; 251 NW2d 258 (1977). In discussing materiality in the context of similar acts evidence, the Supreme Court in *People v Oliphant, supra,* cited with approval McCormick, Evidence (2d ed). We follow its example:

"The remarks of Lord Sumner in *Thompson v The King,* [1918] App. C. 221, 232 are pertinent: 'Before an issue can be said to be raised, which would permit the introduction of such evidence so obviously prejudicial to the accused, it must have been raised in substance if not in so many words, and the issue so raised must be one to which the prejudicial evidence is relevant. *The mere theory that a plea of not guilty puts everything material in issue is not enough for this purpose.* The prosecution cannot credit the accused with fancy defences in order to rebut them at the outset with some damning piece of prejudice.' " McCormick, Evidence (2d ed), § 190, at 452, n 54. (Emphasis added.)

Thus, the general rule is that evidence of other bad acts may be introduced only when the matter which they tend to prove is disputed. *People v Duncan,* 402 Mich 1; 260 NW2d 58 (1977), *People v Stander, supra,* see *People v Corbeil,* 77 Mich App 691; 259 NW2d 193 (1977).

A defendant may dispute matters, and thus

nection with the charged offense is to admit precisely the kind of evidence condemned in the cases quoted at the beginning of this discussion, *i.e.,* evidence relevant only to the defendant's propensity to commit the offense. McCormick, Evidence (2d ed), § 190, at 453, Stone, *The Rule of Exclusion of Similar Fact Evidence: America,* 51 Harv L Rev 988, 1007 (1938).

place them in issue, by raising them in opening argument, by cross-examining prosecution witnesses or by presenting affirmative evidence on them. Until an issue is thus disputed it is not a proper subject for proof by other bad acts.

The decisions of our Supreme Court indicate three exceptions to the requirement that a matter be disputed before other bad acts may be introduced concerning that matter.

The first exception is that the prosecution may introduce in its case in chief evidence probative of a design, scheme or plan,[5] see, *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975), or of the identity[6] of the perpetrator of the charged offense, *People v Kelly,* 386 Mich 330; 192 NW2d 494 (1971), where the purpose of such evidence is to prove that *defendant* (and not some other person) committed the act for which he stands accused.[7]

The second exception is that in cases in which the crime charged is one in which the criminal intent necessary for conviction may not be inferred from the mere commission of the act, the prosecution may introduce in its case in chief

---

[5] "[D]esign or plan * * * refers * * * to an antecedent mental condition which evidentially points to the doing of the act planned. Something more than the doing of similar acts is required in evidencing design, as *the object is* not merely to negative an innocent intent, but *to prove the existence of a definite project directed toward completion of the crime in question * * ** . [T]he conclusion that the defendant did the act is inferred from a particular design, not from common features." Slough and Knightly, *Other Vices, Other Crimes,* 41 Iowa L Rev 325, 329–330 (1956), citing 2 Wigmore, Evidence (3d ed), §§ 300, 304. (Original footnotes omitted.)

[6] "[In proving identity with similar facts evidence] one seeks out common features in another crime *to point up the likelihood that the accused was the perpetrator of the crime in question." Id.* at 330, citing 2 Wigmore, Evidence (3d ed), §§ 306, 410–413. (Emphasis added.)

[7] We point out, however, that even where such evidence is admissible in the prosecution's case in chief, the trial court still must weigh the probative value against the prejudicial impact.

evidence of other bad acts to prove that intent.[8] See, *People v Duncan, supra, People v Johnston,* 328 Mich 213; 43 NW2d 334 (1950). A third exception apparently exists permitting presentation of evidence of a plan, scheme or system in the prosecutor's case in chief where the charged offense is conspiracy. See, *People v Ormsby,* 310 Mich 291; 17 NW2d 187 (1945), *People v McCrea,* 303 Mich 213; 6 NW2d 489 (1942).

We emphasize that unless one of the aforementioned exceptions applies, it is error to admit evidence of other bad acts upon an issue that is not actually disputed at trial.

After the aforementioned requirements have been met, the trial court must weigh the probative value of the evidence against its likely prejudicial effect, and must exclude the evidence if the latter predominates. *People v Oliphant, supra.* In making its determination, the trial court should consider *inter alia* the availability of less prejudicial sources of proof, the necessity of the evidence to prove an element of the prosecution's case, the defendant's theory of the case, the tendency of the evidence to inflame the passions of the jury, and

---

[8] This exception has been applied to a limited number of crimes: obtaining money or property under false pretenses with intent to defraud, *People v Vida,* 381 Mich 595; 166 NW2d 465 (1969), *People v Bigge,* 288 Mich 417; 285 NW 5 (1939), *People v Smith,* 271 Mich 553; 260 NW 911 (1935), *People v Guise,* 262 Mich 72; 247 NW 111 (1933), *People v Mears,* 251 Mich 359; 232 NW 358 (1930), embezzlement, *People v McHugh,* 286 Mich 336; 282 NW 168 (1938), *People v Kennan,* 275 Mich 452; 266 NW 468 (1936), *People v Hopper,* 274 Mich 418; 264 NW 849 (1936), *People v Stuart,* 274 Mich 246; 264 NW 359 (1936), *People v Allan,* 263 Mich 182; 248 NW 589 (1933), *People v Kolowich,* 262 Mich 137; 247 NW 133 (1933), *People v Dixon,* 259 Mich 229; 242 NW 896 (1932), *People v Armstrong,* 256 Mich 191; 239 NW 275 (1931), receiving and concealing stolen property, *People v Fleish,* 306 Mich 8; 9 NW2d 905 (1943), *People v Kirillidis,* 285 Mich 694; 281 NW 408 (1938), *People v Hanenberg,* 274 Mich 698; 265 NW 506 (1936), uttering and publishing a false check with intent to defraud, *People v Golner,* 308 Mich 351; 13 NW2d 846 (1944), bribery, *People v Johnston,* 328 Mich 213; 43 NW2d 334 (1950).

its potential for confusing the issues in the case. *People · v Oliphant, supra, People v Spillman,* 399 Mich 313; 249 NW2d 73 (1976), *People v Corbeil, supra, People v Fisher,* 77 Mich App 6; 257 NW2d 250 (1977).

Applying the foregoing principles to the instant case, we find that the admission of testimony concerning the defendant's prior conviction was erroneous. The absence of any connection between the circumstances underlying that conviction and the instant case renders that testimony irrelevant. *People v Lundberg, supra, People v Padgett, supra.* Furthermore, the matters upon which the testimony allegedly bore—intent and absence of mistake (knowledge)—were not disputed by the defendant in opening argument or in cross-examination of prosecution witnesses. We also note with disapproval the purpose for which the prosecutor offered the evidence:

"I'm trying to bring across the point that your client likes to carry guns".

That point is precisely what the exclusionary rule forbids—evidence showing no more than the defendant's disposition to commit the charged offense. See, *People v Oliphant, supra,* at 491.

We also find that the trial court erred in permitting cross-examination regarding the incident in which the defendant and his passenger were arrested for carrying weapons in an automobile. We infer from the record that the trial court admitted the evidence as probative of a scheme or plan. Yet nowhere is the nature of that scheme or plan indicated, nor was there any attempt to connect that incident to the crime charged.

Having found error, we must determine whether

it necessitates reversal. The pertinent standard involves a dual inquiry: (1) Was the error so offensive to the maintenance of a sound judicial system as to require reversal? (2) If not, was the error harmless beyond a reasonable doubt? *People v Sherman Hall,* 77 Mich App 456; 258 NW2d 517 (1977).

The purpose of the first criterion is to deter prosecutorial and police misconduct. *People v Swan,* 56 Mich App 22; 223 NW2d 346 (1974). Given the absence of a definitive appellate statement governing the admission of other bad acts evidence, we do not find that the prosecutor deliberately injected the evidence knowing it to be prejudicial and without probative worth.

In applying the second criterion we must decide if it is reasonably possible that in a trial free of the above errors even one juror might have voted to acquit the defendant. *People v Ronald Green,* 74 Mich App 601; 254 NW2d 788 (1977).

We find the admission of testimony regarding the defendant's prior conviction harmless because the defendant himself testified at length as to the circumstances underlying it. He did so to support his claim that his unsigned statement referred not to the instant case but to the prior conviction. Thus, regardless of its introduction by the prosecutor, it is certain that the defendant himself would have injected that conviction into the trial in order to explain away an otherwise unchallenged admission of guilt.

We also find the second erroneous admission of evidence harmless on the instant facts[9] because of the strength of the people's case. The defendant's

---

[9] Our analysis here is premised on the minimally inflammatory nature of the bad act introduced. If the forbidden evidence had a strong tendency to arouse the jury's passions against the defendant or to otherwise distract or confuse the jury, we would reverse regardless of the strength of the prosecution's case because of the likelihood that

inculpatory statement was the most powerful evidence presented against him. His characterization of it as describing another incident was contradicted by the interrogating officer's testimony that the only case mentioned or discussed was the instant one, and also by a significant item of independent evidence: rebuttal testimony that the pistol in the instant case had in it a spent shell that had failed to eject. That tied the defendant's confession to this case and corroborated the testimony that only the instant charge had been discussed with the defendant. In view of the eyewitness testimony and the defendant's statement, we find no reasonable possibility that exclusion of the erroneously admitted evidence would have altered the jury's verdict.

The defendant's final contention is that the trial court's sentence of 4-1/2 to 5 years violated the indeterminate sentence act, MCLA 769.8; MSA 28.1080, as interpreted by *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972). The trial court construed the statute as inapplicable to the defendant because of his three prior felony convictions. There exists a split of authority on this Court as to whether *Tanner* applies in these circumstances. Compare, *People v Banks,* 73 Mich App 492; 252 NW2d 501 (1977), with *People v Redwine,* 73 Mich App 83; 250 NW2d 550 (1976). We are persuaded that *Redwine* is the sounder decision, and for the reasons stated therein we modify the trial court's sentence to 40 months to 5 years imprisonment.

Affirmed as modified.

---

the jury's ability to objectively consider the facts would have been compromised.

"In applying this standard, we may not substitute our independent judgment of the defendant's guilt or innocence for the jury's judgment. Instead, we must assess only what effect the error had or reasonably may be taken to have had upon the jury's decision." *People v Sherman Hall,* 77 Mich App 456; 258 NW2d 517 (1977).