PEOPLE v ROEDER

1. CRIMINAL LAW—EVIDENCE—PRIOR SIMILAR ACTS—ADMISSIBILITY—
   SCHEME, PLAN OR SYSTEM—OBJECTION TO ADMISSIBILITY—
   JUDGE'S DISCRETION.

   A statute permits the introduction of like acts or other acts of a
   defendant as evidence of a scheme, plan or system in commit-
   ting a criminal act, but even where evidence of such acts is
   admissible under the statute an objection by the defendant
   calls for an exercise of discretion to determine whether any
   probative value is outweighed by potential prejudice (MCLA
   768.27; MSA 28.1050).

2. CRIMINAL LAW—EVIDENCE—PROBATIVE VALUE—PREJUDICIAL EF-
   FECT—FACTORS TO DETERMINE ADMISSIBILITY.

   A court may exclude relevant and material evidence from a trial
   if the probative value of such evidence is substantially out-
   weighed by its unfairly prejudicial effect; in determining admis-
   sibility the court must balance many factors including: the time
   necessary for presenting the evidence and the potential for
   delay; how directly it tends to prove the fact in support of
   which it is offered; whether it would be a needless presentation
   of cumulative evidence; how important or trivial the fact
   sought to be proved is; the potential for confusion of the issues
   or misleading the jury; and whether the fact sought to be
   proved can be proved in another way involving fewer harmful
   collateral effects.

3. CRIMINAL LAW—EVIDENCE—PRIOR SIMILAR ACTS—ADMISSIBILITY—
   PROBATIVE VALUE—PREJUDICE—JUDGE'S DISCRETION.

   It was an abuse of discretion, in a trial for felony murder in the
   death by fire of a defendant's two young children, to have
   admitted over objection, evidence of another suspicious fire

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence § 326.
[2] 29 Am Jur 2d, Evidence §§ 253, 260.
[3] 29 Am Jur 2d, Evidence §§ 260, 326.
[4] 29 Am Jur 2d, Evidence §§ 250, 269.
[5] 40 Am Jur 2d, Homicide §§ 525, 528–530, 533, 534.

where the tendency of the evidence to prove a scheme, plan or system was so slight while the likelihood that the jury would use the evidence for an improper purpose or would attach undue weight to it was so great that the potential for prejudice clearly outweighed the probative value of this evidence.

4. CRIMINAL LAW—EVIDENCE—REBUTTAL—WITNESSES—COLLATERAL MATTERS—CROSS-EXAMINATION.

Rebuttal is limited to the refutation of relevant and material evidence bearing on an issue properly raised in a case by way of defense or in the prosecutor's case in chief; where not properly raised in this manner, the device of eliciting a denial of some statement not properly in the case at the time of denial will not serve to inject an issue, and both the statement and the veracity of the witness are then collateral matters and the prosecutor is bound by the response.

5. HOMICIDE—FIRST-DEGREE MURDER—MANSLAUGHTER—LESSER INCLUDED OFFENSES—INSTRUCTIONS TO JURY.

Manslaughter is a lesser included offense of first-degree murder, and the trial court must so instruct the jury upon request if there is evidence in the record, however slight, which will support a manslaughter conviction.

Appeal from Midland, James R. Rood, J. Submitted October 11, 1977, at Lansing. (Docket No. 30425.) Decided November 21, 1977.

Judy Ann Roeder was convicted of second-degree murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Doyle A. Rowland,* Prosecuting Attorney, and *Richard L. Lee, Jr.,* Assistant Prosecuting Attorney, for the people.

*Wilson, Stone & Beale* (by *Lynn Schefsky),* for defendant.

Before: DANHOF, C. J., and ALLEN and H. L. HEADING,* JJ.

H. L. HEADING, J. Defendant was charged with two counts of felony murder in the death by fire of her two young children. She was found guilty by a jury of two counts of second-degree murder, MCLA 750.317; MSA 28.549, and was sentenced to terms of 10 to 20 years imprisonment. She now brings this appeal as of right.

The charges against defendant arose out of a nighttime fire which destroyed the mobile home in which she resided with her husband and children. Defendant and her husband were able to escape, but their two sons, ages two and three, were killed in the blaze. The fire was discovered when defendant's husband, Lester Roeder, awoke around 11 p.m. on January 24, 1976, to find the bedroom filled with smoke and intense heat. He awakened defendant, and they made their way to the door of the trailer. They ran to a neighboring house to raise the alarm, then returned to try to rescue their children. All efforts to enter the trailer failed, and when the first fire engine arrived at approximately 11:18 p.m., the house trailer was engulfed in flames.

On-the-scene investigation by Detective Lapp of the Midland County Sheriff's Department, undertaken while the fire was being extinguished, revealed a large hole in the living room floor. Sergeant Hofmann, an arson investigator for the Michigan State Police, testified that the type of hole observed by Detective Lapp was caused by a large amount of combustible material lying on the floor. On the basis of information supplied by Lester Roeder, Sergeant Hofmann concluded that

---

* Detroit Recorder's Court judge, sitting on the Court of Appeals by assignment.

no large piece of furniture could have caused the hole. He therefore formed the opinion that the fire was started at the site of the hole in the living room floor by someone piling up combustible material and lighting it.

Defendant's husband testified that no large piece of furniture or other combustible object had been located at the site of the hole in the living room; defendant, however, testified that she thought a large, stuffed animal belonging to the children was sitting there on the evening of the fire. Lester Roeder also testified that defendant had admitted to him that she was awake and moving about through the trailer approximately 15 minutes prior to the fire; defendant, however, testified that she was up and about more than one hour prior to the discovery of the fire, and then returned to bed. On the basis of Lester Roeder's testimony, Sergeant Hofmann testified that, in his opinion, the fire was intentionally set.

I

Defendant's first claim of error concerns the admission of evidence of a fire which occurred approximately three weeks before the fire which claimed the lives of defendant's children. The earlier fire took place at the home of defendant's parents, and was limited to a mattress in an upstairs bedroom. At the time the fire was discovered, only defendant and her family were in the house, defendant and her husband in the living room and the children in a downstairs bedroom.

Over defendant's objection, the trial court admitted testimony by a fireman who was called to the scene to extinguish the mattress fire that he could find no cause for it and that defendant seemed calm. Lester Roeder testified that the fire was

discovered shortly after he returned from an errand. Sergeant Hofmann was also permitted to testify that in his opinion the mattress fire was caused by a human agency, although he could not say it was intentionally set.

The trial court held the evidence of the mattress fire admissible under MCLA 768.27; MSA 28.1050, which provides:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

Construing the statute, this Court said in *People v Bledsoe,* 46 Mich App 558, 560; 208 NW2d 545 (1973):

"[E]ven when evidence of prior acts is admissible under this statute, an objection calls for an exercise of discretion to determine whether any probative value is outweighed by potential prejudice." Accord, *People v Corbeil,* 77 Mich App 691; 259 NW2d 193 (1977).

The factors to be considered in determining whether probative value is outweighed by potential prejudice were set out in *People v Oliphant,* 399 Mich 472, 489–490; 250 NW2d 443 (1976):

"Relevant and material evidence may still be excluded from a trial if the probative value is substantially outweighed by its unfairly prejudicial effect. In

determining admissability the court must balance many factors including: the time necessary for presenting the evidence and the potential for delay; how directly it tends to prove the fact in support of which it is offered; whether it would be a needless presentation of cumulative evidence; how important or trivial the fact sought to be proved is; the potential for confusion of the issues or misleading the jury; and whether the fact sought to be proved can be proved in another way involving fewer harmful collateral effects." (Footnote omitted.)

The fact, in support of which the evidence of another suspicious fire was offered, can only be either defendant's intent to burn the trailer or her scheme, plan or design in so doing, both of which negative the possibility that the trailer fire was accidental. While either of these is an important fact not easily susceptible of proof, upon which little other evidence was offered, the tendency of the evidence to prove either of these facts is so slight, while the likelihood that the jury would use the evidence for an improper purpose or would attach undue weight to it is so great, that the potential for prejudice clearly outweighs the probative value of this evidence.

The probative value of the mattress fire is, in fact, very slight. The only evidence that the fire in the mattress was intentionally set was the testimony of the fireman on the scene that he could find no cause for it, leading the arson expert to the conclusion that a human agency must have caused it, whether intentionally or accidentally. The only evidence that the mattress fire was set by defendant was the fact that she was present in the house when it occurred. This is in stark contrast to the usual case which arises under MCLA 768.27; MSA 28.1050, in which there is ample evidence that a similar offense has been committed and direct or strong circumstantial evidence that defendant was

the perpetrator. *Cf. People v Spillman,* 399 Mich 313; 249 NW2d 73 (1976), *People v Allen,* 351 Mich 535; 88 NW2d 433 (1958).

To permit the jury to find that the mattress fire was a like act of defendant, two inferences must be taken from the evidence presented: first, that the fire was intentionally set; and second, that defendant set it. There was no direct evidence to establish either of these points. The chain of reasoning which must be constructed to reach the conclusion that the mattress fire was a similar act of defendant is so attenuated as to render the probative value of the evidence negligible. That its prejudicial effect was conversely great is obvious; as defendant points out, the prosecutor made much of the earlier fire in his argument. Under the circumstances, we conclude that the trial court abused its discretion in admitting the evidence of the prior fire.

## II

Defendant's next allegation of error concerns the rebuttal testimony of a prosecution witness, Mrs. Wenzel. Defendant testified at trial, and during cross-examination was asked by the prosecutor whether she had shown Mrs. Wenzel, who was her landlady, a scrapbook containing a newspaper article about the fire in her parent's home. Defendant denied having done so. Over the objection of defendant, the prosecutor was permitted to recall Mrs. Wenzel to the stand to testify in rebuttal that defendant had, in fact, shown her a scrapbook containing such an article.

On appeal, defendant contends that Mrs. Wenzel's testimony was improper rebuttal, citing *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975). We agree. The Supreme Court in *Bennett, supra,*

449–450, expressly condemned the device used by the prosecutor here, saying:

"Rebuttal is limited to the refutation of relevant and material evidence—hence evidence bearing on an issue properly raised in a case.

"Such issue of course could be one raised in the prosecutor's case in chief or one raised by way of defense, and evidence on either would be subject to rebuttal.

"But here, where the prosecutor did not offer this evidence in his case in chief, which he would have had to do if this were to be regarded as an admission or part of a scheme, it did not bear on an issue raised by the people.

"Neither does it bear on an issue raised by the defense.

"The device of eliciting a denial of some statement not properly in the case at the time of denial will not serve to inject an issue.

"Both the statement and the veracity of the witness are then collateral matters and the cross-examiner is bound by the response. *People v Hillhouse,* 80 Mich 580; 45 NW 484 (1890). We hold that Williams' testimony was not proper rebuttal."

In the case at bar, no evidence about the scrapbook was presented either in the prosecutor's case in chief or in the defendant's case. The entire issue of the fire at the home of defendant's parents was a collateral matter. Defendant was being tried on charges arising out of the fire which occurred at her mobile home, not the earlier fire at her parents' house. Whether or not defendant kept a clipping about the earlier fire has no probative value on the question whether defendant intentionally burned her trailer home. As a collateral matter, the subject of the scrapbook concerning the earlier fire is appropriate neither for substantive rebuttal nor for extrinsic impeachment of

defendant's testimony. *People v Bennett, supra,*
*People v McGillen #1,* 392 Mich 251; 220 NW2d
677 (1974).

## III

Finally, we discuss defendant's contention that
the trial court erred in refusing to charge the jury
on the lesser included offense of manslaughter
upon defendant's timely request. We agree that
failure to give the requested instruction was error.

Manslaughter is a lesser included offense of first-
degree murder, and the trial court must so in-
struct the jury upon request if there is evidence in
the record, however slight, which would support a
manslaughter conviction, *People v Paul,* 395 Mich
444; 236 NW2d 486 (1975), *People v Van Wyck (On
Rehearing),* 76 Mich App 17; 255 NW2d 754 (1977).

"[W]here a defendant is charged with first-degree
murder in the perpetration of a felony, and where there
is evidence that indicates that the killing was not done
with malice, the trial court may instruct the jury as to
the lesser included offenses of first-degree murder, in-
cluding manslaughter. In other words, the question
whether the defendant acted with malice, (*i.e.,* the
intent to kill either actual or implied) is left to the jury
even in cases in which the killing occurred during the
perpetration or attempt to perpetrate a felony." *People
v Fountain,* 71 Mich App 491, 504; 248 NW2d 589
(1976).

Defendant testified that she tried several times
to rescue her children, evidence which, if believed,
could justify a jury finding that she lacked the
malice necessary to elevate manslaughter to mur-
der.

Additionally, defendant testified that she had
emptied an ashtray into a wastebasket, and be-

lieved that the fire resulted from that act, which the jury might find was gross negligence and therefore manslaughter. *People v Carter,* 387 Mich 397; 197 NW2d 57 (1972).

Defendant's other claims of error are without merit.

Reversed and remanded for a new trial.